# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| SLAINTE INVESTMENTS LIMITED PARTNERSHIP,<br><br>                Plaintiff,<br><br>   v.<br><br>JOHN B. JEFFREY a/k/a TUCKER JEFFREY,<br><br>                Defendant. | Civil Action No.<br>3:14-cv-1750 (CSH)<br><br><br>**MARCH 30, 2015** |

## RULING ON DEFENDANT'S MOTION TO ASSERT
## FIFTH AMENDMENT PRIVILEGE

**HAIGHT, Senior District Judge:**

## I.   BACKGROUND

On November 21, 2014, Plaintiff Slainte Investments Limited Partnership ("Plaintiff" or "Slainte") commenced this diversity action against Defendant John B. (a/k/a Tucker) Jeffrey ("Defendant" or "Jeffrey"),  alleging that Jeffrey defrauded Slainte out of considerable sums of money.  With respect to discovery, Defendant thereafter filed  a self-styled "Emergency Motion for Protective Order" [Doc. 21] relating to Plaintiff's scheduled deposition of Jeffrey for February 16, 2015.  In light of a change in counsel and an issue regarding whether Plaintiff's counsel should be disqualified in this matter, Defendant requested that his deposition be adjourned.[1]  The Court resolved the Motion on February 13, 2015, adjourning Defendant's deposition until March 17, 2015

---

[1]   The  Court  notes  that Defendant has filed  a separate "Motion to Disqualify Counsel" [Doc. 28], which the Court will resolve in a later ruling.

at 10:00 am.  Doc. 25.  At that time, the Court specified that the deposition should continue after March 17 "from day to day and on succeeding days, eight hours per day . . . until the deposition is concluded."  *Id.*, at 4 (¶ 1).  The Court informed the parties that it would be available (*i.e.*, "present in Chambers") during March 17 and the following days "to conduct any hearings or resolve any disputes that [might] arise during the deposition." *Id.*, (¶ 2). Furthermore, the Court instructed the parties that if Defendant wished to assert a Fifth Amendment privilege before he began his testimony "on the basis of circumstances presently known to counsel," his counsel must file and serve a motion seeking to enforce that privilege. *Id.*, at 4-5 (¶ 4).

Defendant's counsel has heeded the provisions of the aforementioned Order, moving on behalf of her client for permission to invoke the Fifth Amendment privilege at his deposition.  Doc. 27.  The Court will resolve that motion herein.[2]

## II.  DISCUSSION

### A.    Fifth Amendment

The Fifth Amendment of the United States Constitution states, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The privilege may be invoked in a variety of settings, including in "any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . ." *Kastigar v. United States*, 406 U.S. 441, 444 (1972).

The United States Supreme Court has held that the Fifth Amendment must be liberally construed "in favor of the right it was intended to secure." *See Hoffman v. United States*, 341 U.S.

---

[2] If  Plaintiff conducted Jeffrey's deposition on March 17, 2015, the Court's present ruling will be *nunc pro tunc*.  *See* n.7 herein, *infra.*

479, 486 (1951).  The privilege thus shields a defendant from having to provide testimony that would support a criminal conviction and "embraces [testimony] which would furnish a link in the chain of evidence needed to prosecute the claimant."  *Id.*  In particular, the Fifth Amendment privilege is applicable when a witness reasonably "apprehend[s] danger from a direct answer," and also "protect[s] innocent men . . . who otherwise might be ensnared by ambiguous circumstances."  *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (citation and internal quotation marks omitted).

In addition, the person who wishes to invoke the privilege need not prove that he or she is entitled to do so.  Rather, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. 486-87.

B.    **Defendant's Motion for Leave to Invoke Fifth Amendment Privilege**

In the case at bar, Defendant has sought permission from the Court to invoke the Fifth Amendment privilege in his deposition testimony.  Doc. 27.  In so doing, Defendant has "advis[ed] the Court that he intends to assert his Fifth Amendment privilege in response to any questions asked during his deposition that would elicit answers that may incriminate him, whether directly, in ambiguous circumstances, or by providing a link in the chain of evidence needed to prosecute him for a federal crime." *Id.*, at 1.  He therefore seeks the Court's permission to invoke said privilege. *Id.*

In support, Defendant has pointed to the language in the Amended Complaint [Doc. 17], alleging that he "developed an elaborate but fraudulent scheme to raise money from friends, neighbors, and colleagues . . . " and perpetrated "numerous actions in 'furtherance' of this 'scheme.'"

3

Doc. 27-1, at 2 (citing and quoting Doc. 17  ("Amended Complaint") ¶¶ 6-7, 11, 13, 17-18, 23, 31). Furthermore, Defendant emphasizes that the "actions alleged include oral and written misrepresentations concerning business enterprises that were not legitimate, and misappropriation of investment funds to personal use."  Doc. 27-1 (citing Doc. 17, ¶¶ 7-37).  For example, the Amended Complaint alleges that Defendant "implemented a 'pyramid scheme,'" and engaged in conduct "in violation of the larceny statute" [Conn. Gen. Stat. § 53a-119(1)-(3)], which "constitute[d] larceny in the first degree" under Conn. Gen. Stat. § 53a-122.  Doc. 27-1, at 2. *See also* Doc. 17, ¶¶ 33-37.  Moreover, Defendant has informed the Court that the Amended Complaint "refers to contact by an FBI agent, who would have been conducting a criminal investigation."[3]  Doc. 27-1, at 2  (citing Doc. 17, ¶ 37).  The existence of said investigation was thereafter confirmed by an Assistant United States Attorney, Susan L. Wines.  *Id.*, at 4.  *See also* Doc. 27-2, at ¶ 2 ("Declaration" of Attorney Meredith Braxton, attesting to conversation with AUSA Wines, confirming that "there is an active federal investigation of Mr. Jeffrey," the subject of which "is the same transactions that form the basis of the Amended Complaint").

Defendant clarifies that he does not seek to assert a "blanket" privilege or to be relieved of his obligation to appear at his deposition.  Doc. 27-1, at 3.  Rather, he seeks to employ the privilege as needed to avoid addressing questions that "present potential links in a chain of evidence and/or ambiguous circumstances that could lead to prosecution."  *Id.*, at 4.  *See also* Doc. 27-2 (including

---

[3]  Specifically, Defendant Jeffrey claims that Douglas Mueller, the individual who formed the Plaintiff limited partnership in Texas to invest money on his own behalf and that of his family [Doc. 17, at 2 (¶ 1)], "was contacted by the FBI regarding the transactions detailed in the Amended Complaint." Moreover, Assistant United States Attorney Susan L. Wines confirmed the investigation." Doc. 27-1, at 3-4. *See also* Doc. 27-2 ("Declaration" of Attorney Meredith Braxton), ¶ 2.

testimony of Attorney Braxton that she spoke with AUSA Wines regarding the existence of an F.B.I.

criminal investigation in this matter) and n.3 herein, *supra*.

**C.    Plaintiff's Response**

Plaintiff has responded to Defendant's motion by "accept[ing] the representation of defendant's counsel that at his deposition she will advise him to invoke his Fifth Amendment right against self-incrimination and that he will follow that advice." Doc. 29 ("Plaintiff's Response"), at 1. Furthermore, Plaintiff " does not dispute that John (Tucker) Jeffrey has a valid factual predicate upon which to invoke the Fifth Amendment privilege as a reason to not answer questions that will be posed at the deposition." *Id.* Plaintiff's sole concern is the issue of "admissibility of the [Defendant's] invocation [of the privilege] in  these civil proceedings." *Id.*

Specifically, Plaintiff notes that pursuant to Rule 501, Fed. R. Evid., the rules of privilege are governed by common law.[4] *Id.*, at 1. Pursuant to common law, "[a]lthough a jury in a criminal case is not permitted to draw adverse inferences based on a defendant's invocation of his Fifth Amendment rights, '[t]he Fifth Amendment does not forbid adverse inferences against parties to civil

---

[4] Rule 501, Fed. R. Evid.,  captioned, "Privilege in General," states:

The common law  –  as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise:

the United States Constitution;
a federal statute; or
rules prescribed by the Supreme Court.

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

actions when they refuse to testify in response to probative evidence offered against them.'"  Doc. 29, at 1-2 (quoting 3 Weinstein's Federal Evidence § 513.04[2] and citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) and *Brink's Inc. v. City of New York*, 717 F.2d 700,708 (2d Cir. 1983)).

Moreover, Plaintiff asserts that "[t]o the degree that the state law of privilege governs under [Federal Rule] 501 [of Evidence]," Connecticut "applies the same rule as federal courts," allowing the trial court "discretion to admit into evidence at the time of trial the defendant's invocation of the privilege [asserted] as to various questions."  Doc. 29, at 2 (citing 3 Weinstein, § 513.04[2], at 513-6).

Plaintiff argues that the deposition of Jeffrey will comprise Plaintiff's "sole opportunity to question Mr. Jeffrey about the events which underlie the claim" in this action.  Doc. 29, at 2. Therefore, when Defendant chooses to assert the Fifth Amendment privilege in response to a question, Plaintiff will "record that fact for the benefit of an inference which may be permissibly drawn from it."  *Id.*

In sum, Plaintiff does not contest the validity of Jeffrey's invocation of the Fifth Amendment privilege in response to deposition questions regarding the Amended Complaint's various allegations of potentially criminal conduct.  *Id.*  However,  Plaintiff wishes to inform the Court that it "intends to introduce the deposition as substantive evidence in any subsequent motion or trial." *Id.*  Therefore, Plaintiff "submits that this court should determine that the defendant has prima facie established facts which would permit him to refuse to answer questions on the basis of his fifth amendment privilege against self-incrimination and that he may do so at the deposition on March 17, 2015 on a question by question basis."  *Id.*

**D.**   **Analysis**

**1.**   **Defendant's Right to Invoke the Fifth Amendment Privilege**

The Fifth Amendment provides, in pertinent part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The privilege permits a person to refuse to answer questions, in formal or informal proceedings, where the answers might be used to incriminate him in future criminal proceedings." *United States v. Ramos*, 685 F.3d 120, 126 (2d Cir. 2012) (citing, *inter alia*, *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)).

As the Second Circuit explained in *Andover Data Services v. Statistical Tabulating Corporation*, 876 F.2d 1080, 1082 (2d Cir. 1989):

> The fifth amendment privilege against self-incrimination is one of our most fundamental rights as citizens. Moreover, because it is such an important right, the privilege against self-incrimination can be invoked in any proceeding where the witness "reasonably believes [that his testimony] could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). In keeping with its desire to safeguard fifth amendment rights, the Supreme Court has explicitly held that a district court cannot compel a witness in a civil action "to answer deposition questions over a valid assertion of his Fifth Amendment rights." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-57 (1983); *see National Life Ins. Co. v. Hartford Accident & Indem. Co.*, 615 F.2d 595, 597 (3d Cir.1980) ("It is undisputed that the fifth amendment privilege against self-incrimination may be asserted in a civil action as well as a criminal action.").

876 F.2d at 1082 (lateral citations omitted).

Nonetheless, the right not to answer potentially incriminating questions in a civil or criminal proceeding "is not absolute." *Id.* Rather, the privilege may only be invoked in a situation where there is "a real danger that the testimony might be used against the witness in later criminal proceedings." *Id.* As Justice Blackmun noted, concurring in *Pillsbury Co. v. Conboy*, 459 U.S. 248

(1983), "[i]t is black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness." 459 U.S. at 273 (citation and internal quotation marks omitted).

Moreover, a district court is clearly "precluded from compelling testimony [from an unwilling witness] in a civil deposition over a valid assertion of the Fifth Amendment privilege, absent a specific assurance of immunity for such testimony." *Pillsbury*, 459 U.S. at 264 n.24; *see also Andover Data*, 876 F.2d at 1083. In addition, a district court's protective order is no substitute for the Fifth Amendment privilege. Even a carefully crafted protective order is deemed insufficient to adequately protect an unwilling witness in a civil action from answering questions that could potentially incriminate him. *Andover Data*, 876 F.2d at 1084; *see also In re Grand Jury Subpoena*, 836 F.2d 1468, 1478 (4th Cir. 1988) ("Uncertainty about the ultimate outcome of a protective order will mean that no deponent may always effectively rely on a protective order to secure his right against self-incrimination."), *cert. denied*, 487 U.S. 1240 (1988).

From Jeffrey's submissions, including the "Declaration" of his counsel, it is clear that he may validly invoke the Fifth Amendment privilege with respect to potentially incriminating questions at his deposition. Defendant's counsel has testified by sworn affidavit that she spoke with AUSA Wines, who informed her that a federal criminal investigation is under way with respect to the "transactions that form the basis of the Amended Complaint." Doc. 27-2, ¶ 2. Under such circumstances, it is likely that Plaintiff's deposition questions would potentially elicit incriminating information from Defendant.

Moreover, not only does Jeffrey have the right to invoke the Fifth Amendment privilege to particular questions, he must do so if he wishes to rely on the amendment's protection. *United States*

8

*v. Ramos*, 685 F.3d 120, 127 (2d Cir. 2012).  "As a general matter, the Fifth Amendment privilege is not self-executing." *Id*. (citation omitted).  "Rather, the privilege must be invoked: an individual must claim the privilege to be protected by it." *Id.*  "An individual who makes self-incriminating statements without claiming the privilege is deemed not to have been 'compelled' but to have spoken voluntarily."[5]  *Id.* (citations omitted).

## 2.    Adverse Inference

The Court next addresses Plaintiff's intended use of Jeffrey's deposition transcripts – upon motion or at trial – to draw an adverse inference from Jeffrey's  invocation of the Fifth Amendment privilege.  "While the Fifth Amendment prohibits adverse inferences where parties refuse to testify in response to probative evidence against them in criminal cases, there is no such prohibition in civil actions." *S.E.C. v. Dibella*, No. 3:04 -CV- 1342 (EBB), 2007 WL 1395105, at * 2 (D.Conn. 2007). (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). Therefore, "[i]n a civil matter,  a witness's invocation of his or her Fifth Amendment privilege is admissible and competent evidence, as long as the probative value of the evidence [is] not substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403."[6]  *Id.* (citing, *inter alia*,  *Brink's Inc. v. City of New York*, 717

---

[5]    Defendant  is nonetheless cautioned  to exercise the  privilege with proper care.  Each question should be considered carefully to determine whether the privilege is appropriate – *i.e.*, whether the question may potentially elicit information that could be used to implicate him criminally.  Otherwise, Jeffrey may find himself subject to a motion to compel and ultimately required to pay Plaintiff's reasonable expenses in bringing the motion.  *See* Fed. R. Civ. P. 37(a)(5)(A).

[6]  Rule 403 of Evidence provides:

The court may exclude relevant evidence if its probative value is substantially outweighed *by* a danger of one or more of the following: *unfair prejudice*, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

F.2d 700, 710 (2d Cir.1983)) (internal quotation marks omitted). This follows because "silence in the face of accusation is a relevant fact .... [and] is often evidence of the most persuasive character." *Baxter*, 425 U.S. at 319.

At this point in the proceedings, before any deposition transcript or testimony has been presented for admission into evidence, the Court need not rule on whether a particular adverse inference will be appropriate. Suffice it to say that the Court recognizes that it possesses broad discretion in determining whether to admit evidence of a Fifth Amendment invocation by Defendant. *Brink's*, 717 F.2d at 710. In exercising such discretion, the Court will apply Federal Rule 403 of Evidence and give due consideration to "the nature of the proceeding, how and when the privilege was invoked, and the potential harm for prejudice to opposing parties." *United States v. Certain Real Prop. and Premises Known as: 4003–4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 84 (2d Cir.1995). The Court will also be mindful that a litigant may potentially abuse the Fifth Amendment privilege if he uses it to hamper discovery and thus "gain an unfair strategic advantage over opposing parties" by refusing to testify. 55 F.3d at 84. In weighing prejudice to the Defendant, admission of evidence is not to be deemed as unfair or subject to exclusion under the balancing test of Rule 403, Fed. R. Evid., "if it is merely damning." *Dibella*, 2007 WL 1395105, at *3 (citing *Brink's*, 717 F.2d at 710).

Lastly, the Court reminds the parties that a district court has the discretion to stay a civil proceeding against a defendant facing an overlapping criminal prosecution, provided that the Court makes a particularized inquiry into the circumstances and competing interests in the cases. *See, e.g.,*

---

cumulative evidence.

Fed. R. Evid. 403 (emphasis added).

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99-100 (2d Cir. 2012).  In other words, there may be circumstances for a district court to properly stay a civil proceeding in order prevent substantial prejudice to a defendant's Fifth Amendment rights.  *See, e.g.*, *Ironbridge Corp. v. C.I.R.*, 528 F. App'x 43, 46 n. 1 (2d Cir. 2013) ("as long as a trial court considers the relevant factors and acts with moderation to accommodate both a litigant's valid Fifth Amendment interests and the opposing parties' needs in having the litigation conducted fairly, we will not disturb the measures used by that court in the exercise of its discretion") (quoting *United States v. Certain Real Prop.*, 55 F.3d at 85).  Should Jeffrey eventually be indicted on charges which "overlap" with the accusations against him in this civil case, the "trial court enjoys great latitude in granting or denying a stay based on its studied judgment of the particular facts before it." *Ironbridge Corp.* 528 F. App'x at 46 (citing *Luis Vuitton*, 676 F.3d at 99) (internal quotation marks omitted).

### III.  CONCLUSION

The Court acknowledges Defendant John (a/k/a Tucker) Jeffrey's Fifth Amendment right to avoid self incrimination in these proceedings.  Therefore, Defendant's motion [Doc. 27] for permission to invoke the Fifth Amendment privilege at his deposition is GRANTED.[7]  The Court clarifies that Defendant has the right to invoke the privilege with respect to questions which could potentially elicit testimony that could incriminate him in criminal matters.  Moreover, because the Fifth Amendment privilege is not self-executing, Defendant must invoke it in order to receive its protection.  Accordingly, Defendant may and must invoke his Fifth Amendment privilege if, as he

---

[7]  If  Plaintiff has concluded Jeffrey's  deposition, Defendant's motion [Doc. 27] is granted *nunc pro tunc*, confirming Jeffrey's right to invoke the Fifth Amendment privilege within the context of his deposition.

asserts, he needs protection from having to respond "to any questions asked during his deposition that would elicit answers that may incriminate him," Doc. 27, at 1.

As to Plaintiff's inquiry regarding "admissibility of the invocation of the privilege throughout these civil proceedings" [Doc. 29, at 1], the Court recognizes that, unlike in a criminal case, there is no prohibition in a civil case to prevent an adverse inference if a party refuses to testify in response to probative evidence against him.  Moreover, the Second Circuit has articulated that "*all* parties – those who invoke the Fifth Amendment and those who oppose them – should be afforded every reasonable opportunity to litigate a civil case fully."  *United States  v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn*, N.Y., 55 F.3d 78, 83-84 (2d Cir. 1995) (emphasis in original).  "[B]ecause exercise of Fifth Amendment rights should not be made unnecessarily costly, courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege."  55 F.3d at 84 (citation omitted).

Therefore, if or when Plaintiff seeks to admit  Defendant's deposition testimony, including any Fifth Amendment invocations,  into evidence, the Court will exercise the proper discretion in making its ruling.   At that time, the Court will "explore all possible measures in order to select that means which strikes a fair balance . . . and . .. accommodates both parties." *Id.* (citation and internal quotation marks omitted).   In so exploring, the Court will give "due consideration to the nature of the proceeding, how and when the [Fifth Amendment] privilege was invoked, and the potential harm or prejudice to opposing parties," *United States v. Certain Real Prop.*,  55 F.3d at 84 (citation omitted).   In other words, in weighing the interests of both parties, the Court will examine the particular context of Defendant's invocation of the Fifth Amendment privilege before granting or

denying admission of an adverse inference.  At this time, no such evidentiary issue has been brought

before the Court.

   The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
    March 30, 2015


           */s/Charles S. Haight, Jr.*
           CHARLES S. HAIGHT, JR.
           Senior United States District Judge

13